The CITY OF GLADEWATER et al., Petitioners,

v.

Harold PIKE, Sr. et al., Respondents.

No. C–5418.

Supreme Court of Texas.

April 1, 1987.

Rehearing Denied May 6, 1987.

Earl Roberts, Jr., Roberts, Harbour Smith & Harris, Longview, for petitioners.

Frank L. Supercinski, Longview, for respondents.

ROBERTSON, Justice.

This case raises the question of whether the evidence supports the finding of proximate cause and whether the laws of this State allow exemplary damages to be recovered against a municipality.

The father and nine brothers and sisters of a deceased boy brought this action to recover for severe mental anguish, alleging negligence by the City in the misplacement of the body of the decedent. In answers to issues submitted, the jury found the City grossly negligent in failing to keep records, and that such negligence proximately caused the misplacement of the body. Thereafter, the jury awarded actual and exemplary damages to the father and one sister. The jury also found that no other body was in the grave, that the grave had not been desecrated and that the body had not been removed and lost from the original gravesite.

The court of appeals, at 708 S.W.2d 524, held that the evidence supported the jury findings of proximate cause. Secondly, the court of appeals approved the award of exemplary damages, saying that the Tort Claims Act prohibits such damages against a municipality only for governmental rather than proprietary functions. The court noted that there are no Texas cases which provide that the operation of a cemetery is a proprietary function but cited cases from other jurisdictions which had so held. The court held, however, that Texas law impliedly supports the recovery of exemplary damages against a municipal corporation under the proper circumstances and found that such circumstances existed under the facts, thus affirming the judgment of the trial court. We affirm the holding of the court of appeals that punitive damages may be recovered against a municipality but disagree that the Pikes are entitled to such damages under the present facts.

In 1944, the City of Gladewater purchased a tract of land, designating it for use as a cemetery which it named "Gladewater Memorial Park." The city council subsequently adopted rules and regulations for the care and use of the lots in this city-owned cemetery and designated it as a perpetual care cemetery under the Cemetery Act, ch. 148 § 1, 1945 Tex.Gen.Laws 194, [now TEX.REV.CIV.STAT.ANN. art.

969c (Vernon 1963)]. Under this statute, the city was given the duty to keep a "permanent and well bound" record book containing the identity and locations of lots and graves.

In 1952, Johnny Mack Pike, age 2, died and was buried in the Gladewater Memorial Park. His parents had purchased three adjacent plots, burying him in the middle, with the intention of later being laid to rest on either side of their son. No permanent marker revealing Johnny's final resting place was ever affixed on the grave. In 1976, Mrs. Pike died and the family sought to bury her in the space next to Johnny, but the City informed them that the plot was no longer vacant. Thus, Mrs. Pike was buried in another part of the cemetery after an exchange of deeds. In 1982, the Pike family decided to move both remains to another part of the cemetery so that they could be interred together. At the exhumation of Johnny's gravesite, nothing pertaining to the child could be found, no clothing, no casket and no body. Instead, an adult male body in a wooden casket was found in the grave. The forensic pathologist called by the City testified that it would be very unlikely that nothing would be found in the grave, particularly the metal parts of the coffin. In examining the records of the City, only the deed owners of the plots were noted, as the city manager had never recorded when a plot was filled, nor by whom.

Because the court of appeals upheld the decision of the trial court as to all issues, two questions exist that this court must decide: (1) Does the evidence elicited at trial support a finding of negligence against the City of Gladewater, and (2) Are exemplary damages recoverable against a municipality acting in its proprietary function?

I. *Does the Evidence Support Negligence on the Part of the City?*

Negligence requires the presence of three basic elements: duty on the part of one person to another; breach of that legal duty; and injury to the person to whom the duty is owed as a proximate result of the breach. *Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519, 531 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). The City of Gladewater takes issue only with the jury's finding of proximate cause.

Proximate cause was described to the jury in this case as:

... that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred; and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that event, or some similar event, might reasonably result therefrom....

See *Hart v. Van Zandt,* 399 S.W.2d 791, 793 (Tex.1965); *Young v. Massey,* 128 Tex. 638, 101 S.W.2d 809, 810 (1937).

Thus, the two elements of proximate cause are cause-in-fact and foreseeability. *Williams v. Steves Industries, Inc.,* 699 S.W.2d 570, 575 (Tex.1985); *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980); *Missouri Pac. R. Co. v. American Statesman,* 552 S.W.2d 99, 103 (Tex.1977). Cause in fact means that the omission or act involved was a substantial factor in bringing about the injury and without which no harm would have occurred. *McClure,* 608 S.W.2d at 903. Foreseeability requires that the actor, as a person of ordinary intelligence, would have anticipated the danger that his negligent act created for others. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 549–50 (Tex.1985). Foreseeability does not require that a person anticipate the precise manner in which injury will occur once a negligent situation that he has created exists. *Southwest Forest Industries, Inc. v. Bauman,* 659 S.W.2d 702, 704 (Tex.App.—El Paso 1983, writ ref'd n.r.e.). In applying these rules of law, however, we are dependent upon the facts of the case.

To begin with, it is clear under the facts that the injury here was foreseeable. The major reason to keep a record of burials is to ensure that it is known where bodies are interred. By failing to keep the records, it is obvious that the exact occur-

rence sought to be avoided herein has occurred, namely, that a body cannot be found. The City Manager and City Secretary, as reasonable people, should have anticipated the dangers that their lack of diligence threatened.

■ The City of Gladewater maintains that *no* evidence exists to support the jury finding of factual causation. In deciding a no evidence point, this court may consider only that evidence and the reasonable inferences therefrom which, when viewed in their most favorable light, support the jury's verdict, and reject all evidence to the contrary. *Stanglin v. Keda Development Corp.*, 713 S.W.2d 94, 95 (Tex.1986). *McKnight v. Hill & Hill Exterminators, Inc.*, 689 S.W.2d 206, 207 (Tex.1985); *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985).

In approaching this question, we are cognizant of our decision in *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901 (Tex. 1980), where we held that "proximate cause may not be established by a mere guess or conjecture, but rather must be proved by evidence of probative force." *McClure*, 608 S.W.2d at 904. Like any other ultimate fact, however, proximate cause need not be supported by direct evidence, as circumstantial evidence and inferences therefrom are a sufficient basis for a finding of causation. *Farley v. MM Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975). As in *McClure*, the issue here is whether there is any evidence from which reasonable minds could draw an inference that the negligence was a cause in fact of the injury. The Pikes are not required to distinguish all possible inferences, but must only show that the greater probability was that the lack of record keeping probably caused the injury. The relevant facts show that the Pike family entrusted the body of their loved one to the City, that the remains were placed in a grave, and that the gravesite cannot be located under the City records. The fact that the Pikes believed they knew where Johnny's remains lay should not be controlling. For example, had the Pikes forgotten precisely where the grave was, then sought the proper plot through City records, they would have

been unable to find the gravesite. The fact that no traces whatsoever were uncovered, a situation which even the defense's expert witness said would be extremely unlikely, makes it probable that the wrong grave was uncovered, or at least the excavation was commenced at the wrong spot. How then are the Pikes to determine where the proper site is? Without City records showing which plots are empty or filled, it is impossible for them to do so. The dissent seizes on the fact that the Pikes never actually relied on the records in their search for the remains. Such a statement may very well be so, but any argument on that score is certainly answered by the equitable maxim that a court should not require the doing of a useless thing. *Boman v. Gibbs*, 443 S.W.2d 267, 272 (Tex. Civ.App.—Amarillo 1969, writ ref'd n.r.e.).

■ Proximate cause eventually mandates weighing of policy considerations. It is "a practical test, a test of common experience applied to human conduct." *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 236 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). It is a result of endeavors by the courts to evade, when possible, the "metaphysical and philosophical niceties" in the time-worn discussion of causation. *Springall v. Fredericksburg Hosp. & Clinic*, 225 S.W.2d 232, 235 (Tex.Civ.App.—San Antonio 1949, no writ). Had the City kept proper records, then common sense shows that no problem could have arisen here. Because the injury which has occurred is failure to find the body, and the omission of the City contributed in some ways to that failure, we hold there is evidence of proximate cause from which reasonable minds could draw an inference of negligence. Thus, the Pikes are entitled to actual damages from the City.

## II. *Are Exemplary Damages Available Against a Municipality Under Texas Law?*

While this question is easily asked, the answer necessarily involves several other crucial inquiries, which when examined as a whole will illuminate the proper path to take. This is a case of first impression

before this court, even though the various courts of appeals have long been acquainted with the problem.

■ The first question deals with whether or not Gladewater was exercising its governmental or its proprietary powers in its operation of the cemetery. This is important because the Civil Practice and Remedies Code § 101.024 provides that exemplary damages are not authorized by the Tort Claims Act. Provisions of the Tort Claims Act do not apply, however, when the municipality acts in its proprietary capacity as opposed to its governmental capacity. *Turvey v. City of Houston,* 602 S.W.2d 517, 518 (Tex.1980). Thus, when a tort is committed by an employee when the city is performing a proprietary function, the city is liable. *City of Round Rock v. Smith,* 687 S.W.2d 300, 302 (Tex.1985). A proprietary function is one intended primarily for the advantage and benefit of persons within the corporate limits of the municipality rather than for use by the general public. *Gates v. City of Dallas,* 704 S.W.2d 737, 739 (Tex.1986); *see generally* C. RHYNE, MUNICIPAL LAW § 30–2, at 733 (1957) (if the principal beneficiary is the municipal corporation and its inhabitants, the function is proprietary). Furthermore, the doctrine of nonliability is construed strictly against the municipality. *City of Austin v. Daniels,* 322 S.W.2d 384, 386 (Tex.Civ.App.—Austin 1959), *affirmed,* 160 Tex. 628, 335 S.W.2d 753 (1960).

■ There are no cases in Texas which have decided whether operation of a cemetery is a governmental or proprietary function, but eight other states have recognized it as a proprietary action. *See Spomer v. City of Grand Junction,* 144 Colo. 207, 355 P.2d 960, 963 (1960); *City of Atlanta v. Rich,* 64 Ga.App. 193, 12 S.E.2d 436, 438 (1940); *Hovis v. City of Burns,* 243 Or. 607, 415 P.2d 29, 30 (1966); *Department of Treasury v. City of Evansville,* 233 Ind. 435, 60 N.E.2d 952, 956 (1945); *City of Hopkinsville v. Burchett,* 254 S.W.2d 333, 334 (Ky.1953); *Proprietors of Mount Hope Cemetery Assoc. v. City of Boston,* 158 Mass. 509, 33 N.E. 695, 698 (1893); *War Memorial Hosp. v. Board of County*

*Comm'rs,* 73 Wyo. 371, 279 P.2d 472, 475 (1955). After studying these cases and examining similar situations previously deemed proprietary functions in Texas, we agree with the court of appeals' determination that the operation of a municipal cemetery is a proprietary rather than a governmental action. It is clearly a service designed to benefit the inhabitants of Gladewater; therefore, it falls squarely within the general rule.

This being decided, the next question is the pivotal one: can exemplary damages be recovered against a municipality which is operating under its proprietary rather than its governmental authority?

In 1980, this court recognized that the Tort Claims Act "preserved the claimant's common law rights to seek *unlimited* damages for the negligent acts of a municipality while engaged in a proprietary function." (emphasis added). *Turvey v. City of Houston,* 602 S.W.2d 517, 519 (Tex. 1980). Gladewater contends that the common law does not support the claim for exemplary damages against the municipality as part of such "unlimited" damages. Gladewater and the several amicus briefs cite *McQuillan on Municipal Corporations* § 53.18(a) for the general rule in this country that exemplary damages are not recoverable against municipalities unless expressly authorized by statute. In order to determine whether this precept is correct, we must turn to the case law of other states.

■ Gladewater contends that the general rule of law is basically that a municipal corporation cannot, as a matter of law, be liable for exemplary damages. While it is true that many jurisdictions and cases have so held, there are also a significant number of cases which do not make such a sweeping statement. The case law reveals three distinct ways of dealing with the issue.

The first approach is to deny any exemplary damages as a matter of law. At last count, nineteen jurisdictions had cases which cited this general rule. Many of these cases treat denial of the damages in a summary fashion by merely stating that such damages are not recoverable. *See,*

*e.g., Gonzalez v. City of Peoria,* 537 F.Supp. 793, 797 (D.Ariz.1982); *City of Columbus v. Myszka,* 246 Ga. 571, 272 S.E.2d 302, 305 (1980); *Urban Renewal Agency of Aberdeen v. Tackett,* 255 So.2d 904, 905 (Miss.1971). Other cases, however, delve into the reasons behind the general rule. One persuasive reason to deny is because, according to the Restatement (Second) of Torts § 908, the basic rationalization for the award of exemplary damages is to punish the tortfeasor whose wrongful conduct caused the injury and to deter him and others from similar extreme conduct. In *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 267, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981), the United States Supreme Court recognized and examined this rationale and thereafter refused to allow exemplary damages under 42 U.S.C. § 1983. While the ruling is not specifically on point with the present case, the Court explained the policy behind this decision by saying:

> Regarding retribution, it remains true that an award of punitive damages against a municipality "punishes" only the taxpayers, who took no part in the commission of the tort ... Under ordinary principles of retribution, it is the wrongdoer himself who is made to suffer for his unlawful conduct.... A municipality, however, can have no malice independent of the malice of its officials. Damages awarded for punitive purposes, therefore, are not sensibly assessed against the governmental entity itself.... The other major objective of punitive damage awards is to prevent future misconduct ... [but] it is far from clear that municipal officials, including

those at the policymaking level, would be deterred from wrongdoing by the knowledge that large punitive awards could be assessed based on the wealth of their municipality.

*Id.* at 267–68, 101 S.Ct. at 2759–60. Gladewater asserts that these policy reasons remain valid and important considerations and that similar reasoning has been employed by several courts which have denied the recovery of punitive damages.[1]

The second type of decisions found across the United States are those which treat the municipal corporation as if it were a non-municipal corporate entity. Thus, the municipality will be held liable if under the circumstances a corporation would be. Several cases have espoused this view, with the best policy analysis coming in *Hayes v. State,* 80 Misc.2d 498, 363 N.Y.S.2d 986 (Ct. of Claims 1975), where an employee of a state hospital assaulted a mental patient. The court remarked that, considering

> the myriad of activities performed ... by municipal corporations, it seems obvious that a punitorial award will deter irresponsible and reckless performance of duty on the part of those in responsible and leading executive and administrative positions. Such action is in the interest of the residents of the state who have day to day contact, in dozens of ways, with these public bodies; or to write it more succinctly, is in the interest of "public policy."

*Id.* at 995; *see also Hennigan v. Atlantic Refining Co.,* 282 F.Supp. 667, 683 (E.D. Pa.1967) (court allowed exemplary damage recovery where a statute made municipality liable as if any other litigant for exercising proprietary function); *Young v. City of*

---

**1.** For other examples of this see, *Smith v. District of Columbia,* 336 A.2d 831, 832 (D.C.1975) (without statute and absent extraordinary circumstances, no exemplary damages may be recovered); *Hazen v. Municipality of Anchorage,* 718 P.2d 456, 465–66 (Alaska 1986) (no punitive damages unless statutorily provided, regardless of conduct alleged); *State v. Sanchez,* 579 P.2d 568, 570–71 (Ariz.Ct.App.1978) (without statute, no punitive damages available); *Fisher v. City of Miami,* 172 So.2d 455, 457 (Fla.1965) (exemplary damages are recoverable against wrongdoer, but not against municipality); *Gary v. Falcone,* 169 Ind.App. 295, 348 N.E.2d 41, 45 (1976)

(must assume that municipal officials will do their duty of disciplining wrongdoers without necessity of exemplary damages); *Chappell v. City of Springfield,* 423 S.W.2d 810, 814–15 (Mo. 1968) (taxpayers would bear the burden of paying, but are supposed to be the ones benefitted); *Sharapata v. Town of Islip,* 56 N.Y.2d 332, 452 N.Y.S.2d 347, 437 N.E.2d 1104, 1107 (1982) (exemplary power is largely proportionate to the financial sacrifice it means for the malefactor; this would lead to an anomolous result that the taxing power of municipalities would be considered in arriving at proper damages).

*Des Moines,* 262 N.W.2d 612, 622 (Iowa 1978) (it is apparent that any question going to recovery of exemplary damages versus a municipal corporation is determinable by application of the same legal principles as in cases against private corporations); *Dickerson v. Young,* 332 N.W.2d 93, 99 (Iowa 1983) (while no recovery of exemplary damages available in a section 1983 claim, there is no reason to bar such damage under state law tort theories such as trespass and conversion). Detractors of such treatment by the courts point out, however, that the shareholders of a corporation are not like citizens of a municipality. This is because shareholders can at least theoretically change the management which employs persons who subject the corporation to exemplary damages. *George v. Chicago Transit Authority,* 58 Ill.App.3d 692, 15 Ill.Dec. 896, 897–80, 374 N.E.2d 679, 680–81 (1978). Other courts have allowed the municipality to be treated as a regular corporation for the recovery of compensatory damages but denied the same status for exemplary measures. *Rannels v. City of Cleveland,* 41 Ohio St.2d 1, 321 N.E.2d 885, 887–89 (1975).

The third group of cases are those which have been decided upon the facts involved. The courts here do not hold as a matter of law, but allow the particular circumstances to determine the outcome. The facts that have been seen as crucial are the presence or absence of (1) willfullness, malice, recklessness or gross negligence; (2) award of actual damages, and; (3) ratification of, or responsibility for, the conduct by the governing body. Under this particular standard, a great number of courts have denied exemplary damages simply because the proper elements were not alleged or shown. *See, e.g., Jackson v. Davis,* 530 F.Supp. 2, 5 (E.D.Tenn.1981) (exemplary damages claim dismissed because no evidence of malice, etc.); *Adams v. Salina,* 58 Kan. 246, 48 P. 918, 919 (1897) (even if exemplary damages were available against municipal corporation, plaintiff first must show presence of actual damages); *Holda v. County of Cane,* 88 Ill.App.3d 522, 43 Ill.Dec. 552, 563, 410 N.E.2d 552, 563 (1980) (plaintiff could not recover exemplary damages from

county absent showing that the municipality "ratified, condoned, authorized, or approved" of acts of its employees). Thus, these courts have essentially reserved the right to answer the question of exemplary damages to a case with the appropriate facts.

Gladewater's contention that the weight of authority manifests a denial of exemplary damages is, therefore, only partially correct. It is true that only a few cases have recognized that the municipality will be liable, but it seems that many of the results were due not to the law, but rather to the facts.

As noted before, no Texas Supreme Court opinion has considered the particular issues present in this case. Recently, however, this court addressed a similar issue in *Gates v. City of Dallas,* 704 S.W.2d 737 (Tex.1986). In *Gates,* this court held that when a municipal corporation acts in its proprietary capacity, it is to be treated as a "private citizen" for purposes of recovery of attorney's fees. *Gates* at 740. While not precisely on point, such a decision echoes the results in the *Hayes, Hennigan, Young* and *Dickerson* cases which allowed exemplary damages recovery against a municipal corporation by treating the municipality as a simple corporate entity. Keeping the *Gates* decision in mind, we must examine the decisions of the courts of appeals which have spoken directly to the issue.

Texas courts of appeals have treated the issue of exemplary damages against municipalities in a variety of ways. In *Cole v. City of Houston,* 442 S.W.2d 445, 451 (Tex. Civ.App.—Houston [14th Dist.] 1969, no writ), the plaintiff brought suit against the mayor and the city for wrongful discharge, but the court refused to hear evidence on the exemplary damages issue. The court merely stated the general rule that exemplary damages are not recoverable and cited to several older decisions. The only case cited by the *Cole* court which in any way supports the general rule it announced is *Ostrom v. City of San Antonio,* 33 Tex.Civ.App. 683, 77 S.W. 829, 829–30 (San Antonio 1903, writ ref'd). There, in a tres-

pass to land case, the court noted that "while exemplary damages may, in the proper cases, be recovered for willful injury to land, the case would be exceptional, indeed, when vindictive or more than compensatory damages can be recovered against a municipal corporation." *Ostrom* at 829–30. The major feature here is that the *Ostrom* court, while disallowing exemplary damages on the facts involved, refused to completely foreclose the availability of exemplary damages in an appropriate situation. Another trespass to land situation can be found in *City of Katy v. Waterbury*, 581 S.W.2d 757, 761 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ) where the city sought to use or construct a roadway across defendant's property and defendant responded with a trespass suit. The *Waterbury* court ruled that there was "no liability for exemplary damages unless there is willfulness, wantonness, malice *or* gross negligence." (emphasis added). Then the court echoed the *Ostrom* opinion by saying that municipalities cannot be held liable for exemplary damages except in the most vindictive of circumstances. *Id.* at 761. Since there was no question of gross negligence raised on the facts, the issue of the propriety of exemplary damages was not before the court.

A different standard of conduct was put forth in *Moody v. City of Galveston*, 524 S.W.2d 583, 590 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.), which was a suit brought for injuries caused by ignition of flammable gas knowingly introduced into the plaintiff's water line with water sold by the defendant (a proprietary function). The issue was raised before the jury but no exemplary damages were awarded, as again there was a lack of gross negligence on the part of the defendant. The court remarked that there "must be an entire want of care so as to raise the belief that the acts complained of were the result of conscious indifference to the rights and welfare of others," for exemplary damages to be given. *Id.* at 590.

The final Texas decision on point is *San Antonio River Authority v. Garrett Brothers*, 528 S.W.2d 266, 279–80 (Tex.Civ. App.—San Antonio 1975, writ ref'd n.r.e.),

where City and River Authority employees took underhanded actions to halt the development of defendant's subdivision. The court in *Garrett* specifically disapproved of a 5th Circuit opinion, *Peace v. City of Center, Texas*, 372 F.2d 649, 650–51 (5th Cir. 1967) which held that exemplary damages were recoverable against a municipality where it is proven that the acts were "committed with ... malice or evil intent, or such gross negligence as to be equivalent to such intent." The court also said:

> We need not here hold that an award of exemplary damages is proper only when authorized by statute. We go no further than to hold that, absent a showing of concurrence in, or ratification of, the acts of the municipal officers by the governing body, an award of exemplary damages against a municipality is not warranted by Texas law.

*Garrett Brothers* at 279–80.

Thus it can be seen that Texas courts have not reached a philosophical consensus upon how to evaluate this situation. While *Cole* follows the "denial as a matter of law" view, other Texas courts have merely held that the facts involved did not support exemplary damages, without ruling on the merits of the claim. It is therefore the duty of this court to lay this issue to rest. It is our opinion that a synthesis of all the Texas cases reveals the following rule: As a general rule a municipality may not be held liable for exemplary damages; however, if the plaintiff can show that there is intentional, willful, or grossly negligent conduct which shows an entire want of care to his rights *and* that such conduct can be imputed directly to the governing body of the municipality, exemplary damages may be recovered. Thus, a two-prong test is created. The first prong deals with the culpable state of mind of the actor, while the second prong deals with the imputation of such actions or omissions to the municipal leaders.

### III. *The Two-Prong Test.*

### A. *Culpability of the Municipal Agent.*

■ The first prong essentially asks whether the municipal agent acted with a

culpable state of mind which resulted in injury. Thus, the plaintiff must first show that the actor engaged in willful, wanton, malicious or grossly negligent conduct. The usual test for gross negligence is the one set out by this court in *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981). To be entitled to exemplary damages a plaintiff must show:

> That entire want of care which would raise the belief that the act or omission complained of was the result of conscious indifference to the right or welfare of the person or persons to be affected by it ... In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.

*Burk Royalty* at 920.

The court of appeals in the present case cited *Burk Royalty* for the proposition that "gross negligence may result from a series of negligent acts or omissions and many circumstances and elements may make up indifference amounting to gross negligence." 708 S.W.2d at 527; *Burk Royalty*, 616 S.W.2d at 920.

In the context of exemplary damages against a municipality, however, we agree with the reasoning used by the Fifth Circuit in *Peace v. City of Center*, 372 F.2d 649 (5th Cir.1967). There, the court held that liability will result only if it is "pleaded and proved that the acts giving rise to the claim were committed with such malice or evil intent, or such gross negligence as to be equivalent to such intent." *Peace* at 650. Thus, in order to recover the plaintiff must show at least that amount of conscious indifference which would tend to show malice or evil intent on the part of the actor.

### B. *Attributing liability to the municipality.*

■ To impute tortious actions to the City, it must be shown that the acts were expressly authorized by the municipal government or that they were done "bona fide in pursuance of general authority to act for the municipality on the subject to which they relate." *Christopher v. City of El Paso*, 98 S.W.2d 394, 397 (Tex.Civ.App. —El Paso 1936, writ dism'd). In a recent en banc 5th Circuit case interpreting Texas law, the court remarked that

> Liability must rest on official policy, meaning the city government's policy, and not on the policy of an individual official. The policy is that of the city, however, where it is made by an official under authority to do so given by the governing authority ... City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. Policymakers act in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their performance.

*Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir.1984). Even more recently, the 5th Circuit extended its earlier reasoning by holding that "culpable acts or policy are attributable to the governing body only when made or done by an official to which the governing body has given authority to act or to make policy." *Thomas v. Sams*, 734 F.2d 185, 192 (5th Cir.1984).

### C. *Applying the Facts*

■ To begin with, the present city manager of Gladewater, H.R. Macomber, testified that one of the responsibilities as city manager was to oversee the operation of the cemetery. The cemetery charter gives *absolute* charge over the cemetery to the city manager, subject only to the "recommendations" of the city council. The manager had the veto power over any sale of lots and was explicitly given the duty of keeping accurate records showing the place and date of burials and the identity of those buried in the cemetery. Under these facts, there seems to be little question that the city manager had been vested with the power to act and make policy with reference to the cemetery by the City government. Therefore, his failure to properly carry out this duty should be attributed to the City government, thus fulfilling one prong of the test.

The problem arises in determining the culpability of the several successive city managers in their failure to fulfill their duties. The testimony of city officials showed that they failed to keep required records despite their duty to do so, and revealed that no one could rely on the records to locate a specific decedent. They never disputed the fact that the failure to keep records occurred continuously for nearly thirty-five years. However, even with all of the above facts being true, we are unable to uphold the jury verdict because there is no evidence which shows maliciousness or evil intent on the part of the city officials involved. At best it is a showing of "indifference," and from the record as it stands we cannot find even the slightest inference that such indifferent conduct by the officials was malicious, evil or even conscious. It appears to be only simple negligence and as such will not support the award of exemplary damages under the second prong of the test.

### IV. *Public Policy and Exemplary Damages*

Finally, even though we have based our decision on the law of this jurisdiction, we must also examine Gladewater's contention that public policy mitigates against the award of exemplary damages. Most of these center around the avowed purposes of exemplary damages: punishment and deterrence. First, as noted before, it can be argued that the punishment aspect of exemplary damages has no real meaning in the context of municipalities in that it is the citizen/taxpayer who ultimately bears the burden of the award. Furthermore, a real question exists as to whether exemplary damages against a municipality will act as an effective deterrence against wrongful conduct any more than actual damages would. Another policy argument commonly made is that it should be assumed that municipal officials will do their duty to discipline the tortfeasor, and that other appropriate measures are available through the electorate. The final major policy argument raised is that because exemplary damages are dependent upon the wealth of the defendant, such an award will open up the unlimited taxing power of the municipality as a measuring device of a proper award.

We recognize that these policy reasons are important criticisms of the potential abuses of exemplary damage awards. Thus, any exception to be carved out of the general rule of non-liability must create an *exceedingly* difficult burden to meet. By requiring a plaintiff to show both wanton, malicious, or grossly negligent behavior *and* actual imputation to the city leaders, it will limit recovery to only those exceedingly few situations where the actions of persons in authority show utter disdain for the protection of the citizens' rights. We are aware that our decision today is a fairly novel one with reference to results reached in other jurisdictions and will cause some consternation among municipal leaders and those who serve them. In making any decision, we may look to the laws of other states for guidance, but eventually we must always turn to the cases decided by courts of this State. The apparent implication in the decisional history of the question presented today is that if the proper facts exist, a jury should be able to consider awarding punitive damages against a municipality. The proper facts have never arisen in this State, and there is no certainty that they ever will. We would be remiss, however, in denying prospective awards as a matter of law, as such an action would be tantamount to holding that no conduct could ever be sufficiently egregious to meet the standard. Because one can envision proprietary actions by a city which might warrant a jury's punitive award, we will not foreclose on such an option.

In addition, we believe that the juries of Texas will be the best arbiter, as they always have been, of whether or not exemplary damages are justified under the facts. The same reasoning applies for the amount of the award given, as the jury is in the best position to determine what will deter the wrongdoer from their conduct, whether that wrongdoer is a private citizen or a municipality. We recognize that there is some authority to treat the municipal

corporation in all ways as an ordinary corporation when the municipality is exercising its proprietary functions. We reject such a holding as it would open the cities of this State to potentially devastating judgments arising from the culpable acts of its most minor employees. Such a result would be both unmanageable and undesirable in our modern society where local governments' involvement in day-to-day life is so pervasive. Rather, we believe that each case must stand or fall on its own merits. To reiterate: Unless the plaintiff can show intentional, willful, wanton or grossly negligent acts which show maliciousness or evil intent by a policy-making official of the municipality, no exemplary damages can be awarded.

In the present case, while we sympathize with the Pike family due to the trauma it has undergone, Texas precedent demands that their recovery of exemplary damages be disallowed. Thus, while we affirm the holding of the court of appeals that exemplary damages are recoverable in limited instances under Texas law, we reverse the holdings of the trial court and court of appeals which allowed Harold Pike and Mildred Powell such a recovery.

KILGRALIN, J., concurs.

WALLACE, J., joined by GONZALEZ, J., dissent.

KILGARLIN, Justice, concurring joined by CAMPBELL, Justice.

I concur in the judgment of the court that allows the Pikes to recover their actual damages, but not exemplary damages.

If this court is to allow exemplary damages to be assessed against municipalities, we should not create a separate rule for recovery of those damages. One consistent standard should apply to all causes in which such damages are sought. Treating municipal corporations differently from public corporations leads to a situation where we begin to create arbitrary classifications of tortfeasors.

If the concern is that exemplary damages are too easily obtained, and thus municipalities require a higher degree of protection, the solution is not to create a dual standard, but instead to re-examine *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex. 1981). I, for one, am not undisposed to revisit *Burk Royalty*. In theory, *Burk Royalty* is unassailable. It, too, spoke out against a double standard, in stating "[n]o justification exists for having a different standard for reviewing gross negligence findings in employer cases than in other type cases." *Id.* at 922.

In practice, *Burk Royalty* has allowed gross negligence to be blended in as but a different shade or phase of ordinary negligence in an effort to fathom out the mental attitude of the defendant. I do not advocate a return to the "some care" standard of yesteryear in evaluating gross negligence. However, I am willing to explore alterations that might bring balance in this troublesome area.

WALLACE, Justice, dissenting.

I respectfully dissent. The court has ignored crucial parts of the record and substituted hypothetical scenarios for evidence in order to render an advisory opinion on the issue of municipal liability for exemplary damages.

This case was tried on the Pikes' claim of mental injury and distress stemming from their inability to locate the body of Johnny Mack Pike. The Pikes alleged that the City of Gladewater was negligent in: (1) violating and desecrating the grave of Johnny Mack Pike; (2) wrongfully disinterring the body of Johnny Mack Pike; (3) placing another body in the grave of Johnny Mack Pike; and, (4) losing the body of Johnny Mack Pike. The Pikes also allege the City of Gladewater was negligent in failing to keep accurate records of which graves were occupied, selling the same gravesite to more than one person, and allowing more than one person to be buried in the same site. In its answers to the issues, the jury found the City had been negligent in failing to keep a record of the location of the infant Pike's grave. The jury determined no other body had been placed in Johnny Mack Pike's grave. The jury also determined the infant's grave had not been desecrated, the body had not been removed

or lost from the original gravesite, and the Pikes' gravesites had not been sold to others.

To recover on a theory of negligence, a plaintiff must establish a causal connection between the negligent act or omission complained of and the injuries suffered. This causal connection cannot be established on the basis of mere conjecture or unsupported inference. *Bowles v. Bourdon,* 219 S.W.2d 779 (Tex.1949); *Birmingham v. Gulf Oil Corp.,* 494 S.W.2d 946 (Tex.Civ. App.—Corpus Christi), *affirmed,* 516 S.W.2d 914 (Tex.1973). As a part of the requirement of a showing that the negligence of a party proximately caused an injury, the plaintiff must demonstrate that the act or omission complained of was a substantial factor in bringing about the harm, without which the harm would not have occurred. *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901 (Tex.1980).

The jury's verdict completely fails to establish any causal link between the Pikes' inability to locate Johnny Mack Pike's remains and the failure of the City to keep proper records. The only act of negligence which the jury ascribed to the City was a failure to keep proper records of burials. In a misguided attempt to link the City's failure to keep records with the inability of the Pikes to locate the child's remains, the court has misread the record and substituted hypothetical scenarios for the facts of the case.

The record before us is devoid of any evidence which establishes the City's failure to keep records caused the Pikes to be unable to locate Johnny Mack Pike's remains. The record reveals the body of Johnny Mack Pike lay in an unmarked grave for over 30 years. The Pikes did not attempt to locate the child's grave by consulting the City of Gladewater's records. The exhumation was attempted by a private contractor who searched for the remains on the basis of the Pikes' *assertion* that they knew the location of the grave. Instead of accepting the facts of this case as they are presented, the court substitutes its hypothetical scenario of the Pikes' attempt to consult the City's records in order to locate the gravesite.

This imaginary construct is used by the court to supply the link between the City's failure to keep records and the Pikes' failure to find the remains at the site they chose to search. It ignores the direct uncontroverted evidence that the Pikes not only did not at anytime consult the city records to determine the location of the gravesite, rather they insisted, even in their post submission brief, that they knew at all times where Johnny Mack was buried. This specifically negates the basic premise upon which the court attempts to construct an inference of proximate cause. The court's fiction cannot compensate for the Pikes' failure to obtain jury findings which support a conclusion that the lack of records was a substantial factor in bringing about the injuries the Pikes complain of in their petition.

The fallacy of the court's inference, based itself on imaginary projections of what might have happened, is even more apparent when viewed against the evidence in the case which suggests that the Pikes searched in the wrong location and that there was little chance of finding substantial remains even if the proper site was located. This evidence strongly suggests that the jury would not be justified in making an inference that the lack of city records caused the loss of the Pike child's remains. The court's inference of causation, based upon speculation, is manifestly unreasonable and amounts to fact finding on the part of the court.

There is no evidence in this record which establishes that the City's failure to keep records was a cause-in-fact of the Pikes' inability to locate Johnny Mack Pikes remains. The transposition of hypothetical scenarios into presumed facts has no support in the record and constitutes an unwarranted deviation from proper appellate review.

For the reasons set out in this opinion, I would reverse the judgment of the court of appeals and render judgment for the City of Gladewater. For the same reasons, I would not reach the issue of municipal lia-

bility for exemplary damages, and do not express an opinion with regard to the court's holding on that point.

GONZALEZ, J., joins in this dissenting opinion.