United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 11, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————

No. 06-50389
Summary Calendar

————

CASEY DORAN; ET AL.,

Plaintiffs,

CASEY DORAN,

Plaintiff-Appellant,

v.

MIKE YOHO; ET AL.,

Defendants,

RIFLE BASIX, INC.,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Western District of Texas
No. 4:05-CV-21

————————————

Before SMITH, WIENER, and OWEN, Circuit Judges.

PER CURIAM:[*]

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In this products liability case, Casey Doran appeals the district court's judgment in favor of the defendant, Rifle Basix, Inc., following a jury trial. We affirm.

**I**

Doran's lower leg was amputated after he shot himself while loading a rifle in a moving vehicle. The rifle belonged to Craig Moore. Before the accident, Moore had replaced the original trigger with an LV-1 trigger, which has a much lighter pull. The gun safety was not on at the time of the accident, but Doran claims that the rifle misfired because of a design defect in the LV-1 trigger, which was manufactured by Rifle Basix.

Doran subsequently sued Rifle Basix in Texas state court, alleging a design defect and negligence. Rifle Basix removed the case to federal district court based on diversity. At trial, the jury found that the LV-1 trigger was defectively designed and that the design defect was "a producing cause of the occurrence or injury in question." The jury also found that both Doran and Moore were negligent and that their negligence "proximately caused the occurrence or injury in question." The jury attributed responsibility as follows: 10% to Rifle Basix; 75% to Doran; and 15% to Moore. Because Doran's percentage of responsibility was greater than 50%, the district court entered a take-nothing judgment against him. The district court subsequently denied Doran's motion for new trial.

In this appeal, Doran challenges (1) the sufficiency of the evidence on the jury's proportionate responsibility finding that both his and Moore's negligence were proximate causes of the occurrence or injury and (2) the adequacy of the damages. Because we hold

that there was sufficient evidence to support the jury's proportionate responsibility finding against Doran, we do not reach the damages issue.

## II

The first question we must address is the scope of our review of Doran's legal sufficiency challenges. Doran failed to move for a judgment as a matter of law before the submission of the case to the jury and failed to move for a judgment as a matter of law after the verdict was returned.[1] When the moving party fails to move for a directed verdict at trial, the sufficiency of the evidence supporting the jury's verdict is not reviewable on appeal.[2]

In his motion for new trial, however, Doran essentially challenged the sufficiency of the evidence on this issue.[3] As this court said in *Coughlin v. Capitol Cement Co.*:

> When, as in this case, a motion for new trial has been made on the ground of insufficient evidence to support the verdict and the like, the failure by the losing party to move for a directed verdict . . . still operates to foreclose consideration of the question of sufficiency on appeal, and the appellate court may inquire only whether the trial court abused its discretion in overruling the motion for a new trial.[4]

---

[1]*See* FED. R. CIV. P. 50(a), (b).

[2]*Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297 (5th Cir. 1978) ("Federal appellate courts simply do not directly review jury verdicts. The policy underlying the rule is sound: a party is not permitted to gamble on the verdict and later question the sufficiency of the evidence that led to his defeat.").

[3]*See id.* at 297 n.12 ("Motions for directed verdict and judgment [as a matter of law] are not prerequisites to a motion for new trial.").

[4]*Id.* at 297-98 (quoting *Little v. Bankers Life & Cas. Co.*, 426 F.2d 509, 511 (5th Cir. 1970)); *see also Urti v. Transp.*

3

We review the denial of a motion for new trial by determining "whether there was an 'absolute absence of evidence to support the jury's verdict.'"[5] We conclude, after a complete review of the record, that there was ample evidence to support the trial court's denial of Doran's motion for new trial.

Doran's principle argument on appeal is that his unsafe gun handling practices cannot be a proximate cause of the occurrence or injury as a matter of law because the only cause of the occurrence or injury in this case was the design defect in the trigger assembly. We must first determine whether, under Texas products liability law, the plaintiff's unsafe gun handling practices may be considered as evidence of proportionate responsibility.[6] In essence, Doran claims that his unsafe gun handling practices were simply a failure to guard against the defective trigger assembly. The Texas Supreme Court has held that "a consumer has no duty to discover or guard against a product defect, but a consumer's conduct other than the mere failure to discover or guard against a product defect is subject to [proportionate] responsibility."[7] A consumer must act reasonably and must take reasonable

---

*Commercial Corp.*, 479 F.2d 766, 768-69 (5th Cir. 1973) (comparing the function of the directed verdict and judgment as a matter of law to that of the motion for new trial).

[5]*Coughlin*, 571 F.2d at 298 (quoting *Fugitt v. Jones*, 549 F.2d 1001, 1004 (5th Cir. 1977)).

[6]*See* TEX. CIV. PRAC. & REM. CODE § 33.003.

[7]*Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 594 (Tex. 1999).

4

precautions regardless of whether a product is defective.[8]  In our review of the evidence, therefore, we must determine whether Doran's conduct in this case was merely the failure to discover or guard against the product defect or if there was some other negligence unrelated to the product defect.  In this regard, the Texas Supreme Court's opinion in *General Motors Corp. v. Sanchez* is instructive.

In *General Motors*, the decedent was crushed to death when his 1990 Chevrolet pickup rolled backward and pinned the decedent between an open corral gate and the open driver's side door.[9]  The plaintiffs alleged that the accident occurred when the decedent, thinking that he was shifting the truck into "park," mis-shifted into an intermediate position perched between "park" and "reverse" known as "hydraulic neutral."[10]  The jury found that the transmission was defectively designed and that this defect caused the accident.[11]  The jury also found that the decedent was 50% responsible for the accident, but the trial court disregarded this finding, concluding that the decedent's negligence was simply a failure to discover or guard against the product defect.[12]

---

[8]*Id.*

[9]*Id.* at 587.

[10]*Id.*

[11]*Id.*

[12]*Id.*

The Texas Supreme Court held, however, that the decedent's negligence was not related to the product defect and therefore was subject to proportionate responsibility.[13] The decedent's conduct at issue included his failure to follow the following safety measures that were included in the truck's owner's manual: "(1) set the parking break; (2) place the truck completely in Park; (3) turn off the engine; (4) remove the key from the ignition; (5) check that Park is fully engaged by pulling down on the gearshift."[14] The decedent failed to perform any of these safety measures, and "any one of them would have prevented the accident."[15] The Texas Supreme Court held that this evidence was sufficient to support the jury's proportionate responsibility finding:

> Regardless of any danger of a [product defect], a driver has a duty to take reasonable precautions to secure his vehicle before getting out of it. The danger that it could roll, or move if the engine is running, exists independently of the possibility of a mis-shift [caused by a product defect]. For instance, the driver could inadvertently leave a vehicle in gear or a mechanical problem unrelated to a product defect could prevent Park from fully engaging. A moving vehicle without a driver is a hazard to public safety. . . . [A]lthough we do not expect the average driver to have the engineering background to discover defects in their car's transmission, we do expect the reasonably prudent driver to take safety precautions to prevent a runaway car. [The decedent] had a responsibility to operate his truck in a safe manner. The fact that the precautions demanded of a driver generally would have prevented this accident does not make [the decedent's] negligence a mere failure to discover or guard against a mis-shift [caused by a product defect]. . . . [The

---

[13]*Id.* at 594–95.

[14]*Id.* at 594.

[15]*Id.*

6

decedent's] actions amounted to conduct other than a mere failure to discover or guard against a product defect.[16]

In this case, Doran's conduct included his failure to follow safe gun handling practices, including: (1) always treat every firearm as if it is loaded; (2) always keep a firearm pointed in a safe direction, especially when loading or unloading a firearm; (3) always have the safety in the "safe position" when loading and unloading a firearm; (4) never handle a firearm in a moving vehicle except in an emergency situation. Doran testified that, before the accident, he was fully aware of these principles. Doran's firearms expert, Tom Butters, a former NRA firearm safety instructor, also testified that these are basic firearm safety rules and that they are taught by the NRA, 4-H, and the Texas Department of Parks & Wildlife. Rifle Basix's firearm expert, Dan Walker, a firearms training instructor with the Texas Department of Public Safety, also testified to these basic firearms safety rules. Doran failed to follow any of these safety measures, and any one of them would have prevented the occurrence or injury.

Although the average person handling a rifle is not expected to discover a defective trigger assembly, a reasonably prudent person handling a rifle should take safety precautions to prevent injury from an accidental firing.

Doran contends there is no evidence to support the jury's verdict that his conduct was a proximate cause of the occurrence or injury. The two components of proximate cause are

---

[16]*Id.* at 594-95.

7

cause-in-fact and foreseeability.[17] "The test for cause in fact, or 'but for causation,' is whether the act or omission was a substantial factor in causing the injury 'without which the harm would not have occurred.'"[18] A finding of cause-in-fact cannot be established by mere conjecture, guess or speculation, and "[c]ause in fact is not shown if the [actor's] negligence did no more than furnish a condition which made the injury possible . . . [T]he connection between the [actor's conduct] and [the] plaintiff's injuries simply may be too attenuated to constitute legal cause."[19] The Texas Supreme Court has stated that "'[t]he evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries . . . [and] justify the conclusion that such injury was the natural and probable result thereof.'"[20]

The test for foreseeability "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission."[21] "The danger of injury is foreseeable if its 'general character . . . might reasonably have been anticipated.'"[22] As the

---

[17]*Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003).

[18]*Id.* (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)).

[19]*Doe*, 907 S.W.2d at 477.

[20]*Id.* (quoting *Carey v. Pure Distrib. Corp.*, 124 S.W.2d 847, 849 (Tex. 1939)).

[21]*Id.* at 478.

[22]*Id.* (quoting *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 551 (Tex. 1985)).

8

Texas Supreme Court has stated, "The question of foreseeability, and proximate cause generally, involves a practical inquiry based on 'common experience applied to human conduct.'"[23]

Doran does not dispute that he had the rifle pointed in a downward direction at his leg and foot, that he was handling the rifle in a moving vehicle in a non-emergency situation, and that the safety was off while he loaded the rifle. Doran now argues on appeal that (1) these actions merely furnished the condition that made the injury possible because they were too attenuated to constitute proximate cause and (2) it was not foreseeable that these actions would cause an injury because the mis-fire caused by the product defect was unexpected. All of these unsafe practices occurred mere seconds before the accident occurred and were not remote or attenuated from the accident in question. Also, while the product defect might have been unforeseeable, an accidental discharge from a firearm is not unforeseeable. In fact, as previously discussed, the rules of firearm safety are designed to protect against the accidental discharge of a firearm. It was reasonably foreseeable that an injury could occur if the firearm safety rules are not followed. Because there was ample evidence to support the jury's verdict that Doran's negligence was a proximate cause of the injury, the district court did not abuse its discretion in denying Doran's motion for new trial. The district court's judgment is AFFIRMED.

---

[23] *Id.* (quoting *City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex. 1987)) ("Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury.").