TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00254-CV






L. W. Parker, Appellant



v.



City of Austin, Ron D. Mullen, Bruce M. Todd, Robert Barnstone, Carlton Lee Cooke,


George A. Humphrey, Frank C. Cooksey, Sally S. Shipman, Mark N. Rose,


Charles E. Urdy, Tracy H. Watson, Jorge Carrasco,


and Forrest S. Carl-Mitchell, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 94-08561, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING







 L. W. Parker sued the City of Austin (the "City") and several of its employees and
officials (1) (collectively "appellees"), alleging injury to real property and asserting claims for
negligence, gross negligence, taking of property in violation of the United States and Texas
Constitutions, and violations of 42 U.S.C. section 1983. Appellees filed a motion for summary
judgment contending that Parker did not establish a valid cause of action and raising the
affirmative defenses of limitations, governmental immunity, and qualified immunity. The trial
court granted appellees' motion for summary judgment. We will affirm the summary judgment
order.


THE CONTROVERSY


 The issues raised by Parker revolve around whether the Pamela Heights subdivision
in which Parker owned real property was located within the extraterritorial jurisdiction of the City
of Austin. (2) The Texas Legislature created the concept of extraterritorial jurisdiction ("ETJ") to
promote and protect the general health, safety, and welfare of persons residing in and adjacent to
municipalities. See Tex. Loc. Gov't Code Ann. §§ 42.001-.904 (West 1988 & Supp. 1999); see
also City of Austin v. City of Cedar Park, 953 S.W.2d 424, 426 (Tex. App.--Austin 1997, no
writ); Village of Creedmoor v. Frost Nat'l Bank, 808 S.W.2d 617, 618 (Tex. App.--Austin 1991,
writ denied). Thus, a municipality is granted as its ETJ a designated amount of unincorporated
area adjacent and contiguous to the municipality's corporate boundaries. Tex. Loc. Gov't Code
Ann. § 42.021 (West 1988). The area designated as a municipality's ETJ is determined by the
municipality's population. The statutorily defined ETJ ranges from one-half mile for
municipalities with fewer than 5,000 inhabitants to five miles for municipalities with 100,000 or
more inhabitants. Id.

 The owner of a subdivided tract of land located within the ETJ of a municipality
must prepare a plat of the subdivision. See Tex. Loc. Gov't Code Ann. § 212.004 (West 1988). 
The plat must adequately describe the subdivision and must be filed and recorded with the county
clerk of the county in which the tract is located. Id. A plat may not be filed with the county clerk
without the approval of both the municipality and the county. Id. § 242.001(b). Subdivisions
receiving plat approval qualify as "legal subdivisions" and are eligible to receive public utilities. 
Id. § 212.012.

 Subdivisions located in an unincorporated area outside the ETJ of a municipality
may achieve legal subdivision status simply by filing a plat with the county clerk of the county in
which the tract is located after receiving plat approval from the commissioners court of the county. 
Id. §§ 232.001, .002.; see also Projects Am. Corp. v. Hilliard, 711 S.W.2d 386, 388-89 (Tex.
App.--Beaumont 1986, no writ) (stating that authority of the commissioners court to approve plats
is not discretionary). A municipality may not regulate subdivisions located outside its ETJ or
approve the filing of plats. Tex. Loc. Gov't Code Ann. § 242.001(d) (West 1988). Because a
county's power to regulate subdivisions is less broad than that of a municipality, a subdivision
lying outside a municipality's ETJ may receive plat approval more readily than a subdivision
located within the ETJ. See Elgin Bank of Tex. v. Travis County, 906 S.W.2d 120, 121-23 (Tex.
App.--Austin 1995, writ denied).

 The Pamela Heights subdivision plat was filed in the Travis County Plat Records
on August 25, 1960. At that time, the City of Austin Planning Department determined that
Pamela Heights was less than five miles from Austin city limits and therefore fell within the City's
five-mile ETJ. Because the plat did not comply with city development ordinances, the City
declared Pamela Heights to be an illegal subdivision. See Tex. Loc. Gov't Code Ann.
§§ 212.004-.011 (West 1988). Pursuant to this determination, the City was not authorized to
connect any public utilities, including water, sewers, electricity, and gas, for the use of owners
or purchasers of any part of the subdivision. Id. § 212.012.

 Parker began purchasing lots in Pamela Heights in June 1983. His initial plan was
to build three rental houses on his property. Because of the illegal subdivision status of Pamela
Heights, the City could not supply water to Parker's lots. Parker applied for water service with
the Marsha Water Corporation ("Marsha"), a water supply corporation holding a Certificate of
Convenience and Necessity which gave it the right to provide water to Pamela Heights. See Tex.
Water Code Ann. § 13.242 (West Supp. 1999). Marsha, however, denied Parker's request for
water service, explaining that Marsha did not have adequate capacity to provide water to any
additional lots in Pamela Heights. Although he knew at this point that neither the City nor Marsha
would supply water to additional lots in Pamela Heights, Parker testified that he decided "if I
couldn't get water and I could buy the lots as cheap as they were, that I'd buy as many as I could." 
By late February 1984, Parker had purchased twenty-nine lots in the subdivision.

 Sometime in March or April 1984, Parker discovered that the City's determination
in 1960 that Pamela Heights was within the City's ETJ was erroneous. Parker studied a map of
the 1960 city limits and a more recent map, along with highway mile markers, and determined that


The city limits of the City of Austin in 1960 was Rundberg at I.H. 35, and Rutland
at Burnet Road. According to a scale map of the City of Austin, Rutland and
Burnet Road was more than 5.5 miles from Pamela Heights. In addition, the state
mile marker #242 is .3 of a mile North of Rundberg and the #248 mile marker is
south of Pamela Heights, which places Pamela Heights 6.3 miles north of the city
limits. The Extra Territorial Jurisdiction of the City of Austin in 1960 extended
5 miles beyond the city limits. Thus, according to the scale map of the City of
Austin, Pamela Heights was at least .5 miles beyond the Extra Territorial
Jurisdiction of the City of Austin when it was platted in 1960. (3)



Had a correct determination of Pamela Heights' location in relation to the City's ETJ been made
in 1960, the subdivision could have qualified as a legal subdivision with all corresponding access
to public utilities by virtue of its plat filing in the Travis County Plat Records.

 After learning of the City's erroneous ETJ determination, Parker continued to
purchase lots in Pamela Heights. He acquired sixteen lots in the remaining months of 1984, five lots
in 1985, and four lots in 1986. In 1985, in an effort to obtain utility service for his undeveloped
lots, Parker began meeting with city employees and officials to persuade the City to recognize
Pamela Heights as a legal subdivision. The City reiterated its position that Pamela Heights was
an illegal subdivision that did not qualify for city utility service. The City suggested that Parker
replat the subdivision to conform to city standards. See Tex. Loc. Gov't Code Ann. §§ 212.004,
.010 (West 1988). If Pamela Heights did become legally subdivided, the City suggested that
Parker could: (1) request that the City supply his lots with water; (2) request that the City supply
Marsha with additional capacity that could be used to supply his lots with water; or (3) petition
for annexation to the City.

 Instead of following accepted subdivision procedures, Parker lobbied the city
council, the mayor's office, and other city departments over the course of the next several years
to change the erroneous ETJ designation. Parker's inability to provide water service to his
properties prevented him from selling the lots, and he eventually fell behind on his obligation to
pay the notes secured by the lots.

 In February 1993, the City realized its error and recognized, for the first time, that
Pamela Heights was not within the City's ETJ on August 25, 1960, and that Pamela Heights was,
therefore, a legal subdivision. On February 22, 1993, the City sent Parker a letter verifying that 


Current information indicates that Pamela Heights was not within the E.T.J. and
subject to the Subdivision Ordinance until September 23, 1965 with the annexation
of the Walnut Creek Metropolitan Park. Therefore, the Pamela Heights
Subdivision is recognized as a legal subdivision since it was platted through the
County in 1960 prior to the City of Austin's Subdivision Authority on September
23, 1965.



The notification came too late to save Parker's lots. His efforts to raise capital to pay his debts
failed, and Parker lost his lots to foreclosure in late 1993 and early 1994.

 Parker argues that each time he met with city employees and officials to discuss the
denial of legal subdivision status to Pamela Heights, the individual appellees, although aware of
the problem, simply ignored him, declined to act, or acted and came to the unfounded and
erroneous conclusion that Parker's lots lay within an illegal subdivision. Parker contends that by
failing to act on their knowledge of the legality or potential legality of Pamela Heights, the
individual appellees failed to fulfill the legal duties they assumed by taking the oath of office for
city positions, including the duty "not to deny by act, or omission, the benefits of legal status,
services, permits and authorizations to which owners and residents of Pamela Heights were
entitled."

 Parker contends that the breach of this duty resulted in the continued classification
of Pamela Heights as an illegal subdivision, thwarting its development through the withholding
of utility services. As a result, Parker argues that he was not able to sell, develop, or otherwise
utilize his Pamela Heights lots and eventually lost the lots to foreclosure. Parker claims that
because the City did not discover and correct the error until February 1993, four former city
mayors, six former city councilmembers, a former city manager, and a director for the city
planning department are liable to him for damages caused by their negligence, gross negligence,
taking of property without just compensation, and violations of 42 U.S.C. section 1983.

 Appellees argue that Parker cannot maintain a cause of action for either negligence
or gross negligence because: (1) the applicable limitations period had run; (2) no legally
enforceable duty arises by virtue of an oath taken by a city councilmember; (3) Parker cannot
successfully assert negligence claims under the Texas Tort Claims Act; and (4) the City and the
individual appellees are shielded from liability by governmental immunity and qualified immunity,
respectively. Furthermore, appellees contend that Parker did not establish the elements necessary
to maintain an action for a taking under the Texas Constitution or the United States Constitution. 
Finally, appellees argue that Parker's 42 U.S.C. section 1983 claim is not ripe because state
remedies have not been exhausted.


DISCUSSION AND HOLDINGS


 In granting appellees' motion for summary judgment, the trial court did not specify
the ground on which it based its summary judgment order. When a trial court does not specify
the ground on which it granted summary judgment, the judgment will be affirmed on any
meritorious theory asserted in the motion and found in the record that proves conclusively that the
nonmovant cannot prevail. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989). We review the
record under familiar precepts: (1) a movant for summary judgment has the burden of showing
there is no genuine issue of material fact and it is entitled to judgment as a matter of law; (2) in
deciding whether there is a disputed issue of material fact precluding summary judgment, matters
in the record that favor the nonmovant will be taken as true; and (3) every reasonable inference
from the record must be indulged in favor of the nonmovant and any doubts resolved in its favor. 
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant who
conclusively negates at least one of the essential elements of each of the plaintiff's causes of action
or who conclusively establishes all of the elements of an affirmative defense is therefore entitled
to summary judgment. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995).

 Assuming the evidence of Parker's allegations as true, the most we can infer from
the summary judgment record is that the City, through incompetent acts of its employees and
officials, made a mistake by failing to reclassify Pamela Heights as an legal subdivision. We
cannot infer that the individual appellees intended to injure either Parker individually or his
interest in the Pamela Heights subdivision.

 The summary judgment record is replete with letters and memos concerning the
legal status of Pamela Heights. The extensive correspondence memorializes and describes
meetings between: (1) Parker and city representatives; (2) other concerned Pamela Heights
landowners and city representatives; (3) representatives of the Marsha Water Corporation and city
representatives; and (4) city employees and city officials. The record indicates that the individual
appellees believed that because Pamela Heights fell within the City's ETJ and had not been
subdivided in compliance with the city subdivision regulations, it was properly classified as an
illegal subdivision. City employees and officials suggested several solutions, including: (1)
seeking legal status for Pamela Heights through accepted subdivision procedures; (2) petitioning
for annexation to the City; and (3) persuading the Marsha Water Corporation to request a
wholesale supply agreement from the City, which the City would then consider on its merits. (4) 
Generally, Parker determined that these alternatives were cost prohibitive. While the City
contends that it also suggested to Parker that he obtain a surveyor or an engineer to perform an
on-the-ground measurement, Parker denies that this alternative was ever communicated to him. 
He did, in fact, employ an engineer in early 1993 which led to the change in subdivision status in
February 1993. These suggestions indicate an effort on the part of city employees and officials
to resolve the problem.

 "Gross negligence includes two elements: (1) viewed objectively from the actor's
standpoint, the act or omission must involve an extreme degree of risk, considering the probability
and magnitude of the potential harm to others, and (2) the actor must have actual, subjective
awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights,
safety, or welfare of others." Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex. 1998). 
The summary judgment proof shows that the appellees considered Parker's problem and made an
effort to resolve the problem; it cannot be said that the appellees knew of the likelihood of serious
injury to Parker and, by their acts or omissions, proceeded with conscious indifference. Id.

 We infer from this evidence that the appellees' intent was not to injure Parker's real
property but rather to minimize the number of substandard subdivisions built around Austin and
to comply with the State prohibition against serving illegal subdivisions. Because we find the
summary judgment record supports at most a claim of ineptitude (5) on the part of the City and the
individual appellees, Parker cannot maintain a cause of action for gross negligence.

 Moreover, the summary judgment proof conclusively negates essential elements of
Parker's takings claim under both article I, section 17 of the Texas Constitution and the Fifth and
Fourteenth Amendments of the United States Constitution. Takings can be classified as either
physical or regulatory. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998). 
Physical takings occur when the government authorizes an unwarranted physical occupation of an
individual's property. Id. (citing Yee v. City of Escondido, 503 U.S. 519, 522 (1992)). It is
uncontested that there was no physical occupancy of any of Parker's property by the City. Rather,
Parker can only allege that the City's decision regarding the legality of the Pamela Heights
subdivision constituted a regulatory taking.

 The summary judgment record establishes that Parker did not suffer a total
deprivation of "all economically viable use of his land"; thus, he cannot recover under the theory
of regulatory taking. (6) See Mayhew, 964 S.W.2d at 933; Lucas v. South Carolina Coastal Council,
505 U.S. 1003, 1015-17 (1992). Parker admits that his lots in Pamela Heights had value during
the time he owned them; he filed suit only because of his belief that his lots would have been
worth more had the City provided water. Parker's takings claim also fails because the City did
not intentionally perform acts that resulted in a "taking of property for public use." See Fireman's
Ins. Co. v. Board of Regents, 909 S.W.2d 540, 543 (Tex. App.--Austin 1995, writ denied) (citing
Green Int'l, Inc. v. State, 877 S.W.2d 428, 434 (Tex. App.--Austin 1994, writ dism'd by agr.)). 
Mere negligence is not a compensable taking. See Steele v. City of Houston, 603 S.W.2d 786, 791
(Tex. 1980).

 Parker's only remaining potential cause of action is for negligence. The
determination of whether Parker may maintain a negligence claim (7) requires a review of the
pleadings. Parker filed his original petition on July 13, 1994. On December 19, 1994, Parker
filed his first amended original petition. Appellees filed their first amended special exceptions on
January 13, 1995 and their second amended special exceptions on January 17, 1995. The trial
court held a hearing on appellees' special exceptions on January 26, 1995. The court concluded
that the special exceptions should be sustained and ordered Parker to amend his pleadings by June
6, 1995. In particular, the court stated that, "If [Parker] contends that the individual Defendants
breached a legal duty to him to 'act,' . . . [Parker] is hereby ordered to plead the basis of such
alleged duty."

 Accordingly, Parker filed his second amended petition on June 6, 1995. In his
second amended petition, Parker alleged


The Defendants breached legal duties, owed to Parker in that they failed to act on
their knowledge of the legality or potential legality of Pamela Heights, with an
awareness of the potential damage to Parker. In particular, the Defendants failed
to fulfill the duty they assumed by taking the oath of office for City positions . . . .
They each had a duty to [Parker] . . . not to deny by act or omission, the benefits
of legal status, services, permits and authorizations to which owners and residents
of Pamela Heights were entitled. The Defendants' failure to fulfill their duty
resulted in the continued classification of Pamela Heights as an illegal subdivision.



(Emphasis added.) In a section of his second amended petition entitled "Negligence of an
Employee of the City," Parker incorporated the language quoted above and made clear that he was
suing appellees under the Texas Tort Claims Act based on negligence in the performance of their
governmental functions. (8)

 On January 30, 1998, four days before the hearing on appellees' motion for
summary judgment, Parker filed a third amended petition containing a new section entitled
"Common Law Claims Against Defendants." (9) In this section, Parker alleged for the first time that
the individual defendants committed torts "in the performance of a proprietary function" (10) as
opposed to a governmental function. Parker argued that "[t]he duties that Defendants failed to
carry out were ministerial, non-discretionary duties, in the nature of locating and properly
measuring distances on Defendants' own maps. These duties could have been completed in a
manner of minutes." Appellees filed a motion to strike and the trial court granted appellees'
motion on March 5, 1998.

 In his second point of error, Parker argues that the trial court should have granted
leave to file the third amended petition because appellees did not show that the filing would
operate as a surprise. In their motion to strike the amended pleading, appellees contended that
because Parker's third amended petition alleged, for the first time, that the individual defendants
committed torts in the performance of a proprietary function as opposed to a governmental
function, the amendment improperly asserted a new claim based on common law negligence. 
They argued that the uncontroverted evidence before the court established that the city functions
related to Parker's claims were zoning, planning, plat approval, and engineering functions, which
were clearly governmental functions under the Tort Claims Act. Appellees argued that allowing
Parker to amend his petition in this manner would operate as an unreasonable surprise.

 Rule 63 of the Texas Rules of Civil Procedure provides


Parties may amend their pleadings . . . provided, that any amendment offered for
filing within seven days of the trial . . . shall be filed only after leave of the judge
is obtained, which leave shall be granted by the judge unless there is a showing that
such filing will operate as a surprise to the opposite party.



Tex. R. Civ. P. 63. A summary judgment proceeding is a trial within the meaning of Rule 63. 
See IKB Indus. v. Pro-Line Corp., 938 S.W.2d 440, 441 (Tex. 1997); Goswani v. Metropolitan
Sav. & Loan Ass'n, 751 S.W.2d 487, 490 (Tex. 1988). Accordingly, pleading amendments
sought within seven days of a summary judgment proceeding are to be granted unless there has
been a showing of surprise to the opposite party. Goswani, 751 S.W.2d at 490. This showing
may be based on the trial court's conclusion that the amendment on its face is calculated to
surprise or that the amendment would reshape the cause of action, prejudicing the opposing party
and unnecessarily delaying the trial. See Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.,
Inc., 844 S.W.2d 664, 665 (Tex. 1992) (citing Greenhalgh v. Service Lloyds Ins. Co., 787
S.W.2d 938 (Tex. 1990)); see also Hardin v. Hardin, 597 S.W.2d 347, 349 (Tex. 1980). The
trial court has broad discretion to allow or deny trial amendments, and the court's ruling will not
be disturbed unless the complaining party shows an abuse of discretion. See Yowell v. Piper
Aircraft Corp., 703 S.W.2d 630, 634-35 (Tex. 1986); Hardin, 597 S.W.2d at 349.

 Although the trial court did not state the basis of its denial of the amendment, the
court could have reasonably concluded that the amendment constituted a substantive, rather than
a procedural change, which altered the nature of the suit and resulted in surprise and prejudice. 
Chapin, 844 S.W.2d at 665. For us to disturb the court's ruling, Parker, as the complaining
party, has the burden to show that the trial court clearly abused its discretion in denying the
amendment. Under this record, he has not done so. Parker's second point of error is overruled.

 Because Parker's third amended petition was properly struck, the basis for any
duty owed to Parker by the individual appellees must be contained in Parker's second amended
petition. In that pleading, Parker based his negligence claim on sections 101.0215 and 101.025
of the Texas Tort Claims Act. Section 101.0215 states


A municipality is liable under this chapter for damages arising from its
governmental functions, which are those functions that are enjoined on a
municipality by law and are given to it by the state as part of the state's
sovereignty, to be exercised by the municipality in the interest of the general
public. (11)



Tex. Civ. Prac. & Rem. Code Ann. § 101.0215 (West 1997).

 The City contends that it is shielded from liability even if the acts of its employees
and officials were negligent because its employees and officials were entitled to qualified
immunity. (12) Qualified immunity is an affirmative defense. See City of Lancaster v. Chambers,
883 S.W.2d 650, 653 (Tex. 1994) (citing Perry v. Texas A & I Univ., 737 S.W.2d 106, 110 (Tex.
App.--Corpus Christi 1987, writ ref'd n.r.e.)). Thus, the burden is on the appellees to establish
all elements of the defense. Montgomery v. Kennedy, 669 S.W.2d 309, 310-11 (Tex. 1984). 
Governmental employees are entitled to qualified immunity from suit arising from the performance
of their (1) discretionary acts (2) in good faith as long as they are (3) acting within the scope of
their authority. Chambers, 883 S.W.2d at 653. If the employee is protected from liability under
the doctrine of qualified immunity, the governmental entity's sovereign immunity remains intact. 
City of Houston v. Kilburn, 849 S.W.2d 810, 812 (Tex. 1993).

 If an action involves personal deliberation, decision, and judgment, it is
discretionary; actions which require obedience to orders or the performance of a duty to which the
actor has no choice, are ministerial. Chambers, 883 S.W.2d at 654 (citing Wyse v. Department
of Pub. Safety, 733 S.W.2d 224, 227 (Tex. App.--Waco 1986, writ ref'd n.r.e.)). The summary
judgment record establishes that the individual appellees had no duty to determine whether a
subdivision was within the City's ETJ; (13) moreover, the individual appellees did deliberate the
status of Pamela Heights and came to the conclusion, based on the advice of the city legal
department, that the City had no obligation to serve Pamela Heights. We hold that the acts of the
individual appellees were discretionary.

 Furthermore, because a reasonably prudent city employee or official could have
believed that acting in such a manner was lawful in light of the clearly established law concerning
legal subdivisions and the information possessed at the time the conduct occurred, we hold that
the individual appellees acted in good faith. See Chambers, 883 S.W.2d at 656. Parker has not
controverted appellees' proof regarding good faith; he has not shown that "no reasonable person
in the defendant's position could have thought the facts were such that they justified defendant's
acts." Id. at 657.

 Finally, we hold that the individual appellees, by "listening to the concerns,
questions, and complaints" of their constituency and by "following up on those matters by asking
the city manager to request the appropriate city department to investigate and to prepare a response
to the issues raised," were acting within the scope of their authority. (14) Accordingly, the individual
appellees are entitled to qualified immunity from a suit arising from their evaluation of the legality
of the Pamela Heights subdivision. The sovereign immunity of the City with regard to Parker's
allegations remains intact and shields it from liability as well. Kilburn, 849 S.W.2d at 812. 
Because on these facts all appellees are immune from a suit for negligence, Parker's negligence
claim fails.

 The summary judgment proof of the appellees has successfully negated at least one
essential element of Parker's causes of action for gross negligence, taking of property without just
compensation, and violations of 42 U.S.C. section 1983. Furthermore, appellees conclusively
established all of the elements of their affirmative defenses to Parker's negligence claim. We
overrule Parker's first point of error.

 The judgment of the trial court is affirmed.



 

 Jan Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: March 4, 1999

Do Not Publish

1. At the time suit was filed, Bruce Todd was the Mayor of Austin and Tracy Watson was the
Acting Director of the City of Austin Planning and Development Department; all other individual
appellees were no longer associated with the City of Austin in any official capacity. Mullen,
Cooke, and Cooksey had served as mayor, and Carrasco had served as city manager. The other
individual appellees had served as Austin City Council members.
2. Austin is a home rule municipal corporation. See Bailey v. City of Austin, 972 S.W.2d 180,
192 (Tex. App.--Austin 1998, pet. denied).
3. Tracy Watson, the Director of the City of Austin Planning and Development Department,
testified that highway mile markers do not necessarily provide accurate measurements and are not
relied upon as survey data.
4. In 1991, the Marsha Water Corporation requested that the City provide it wholesale water
service. Although the City determined that it could sell water to Marsha for the use of existing
customers, the City maintained that any "new service or upgrade to existing service will
necessitate the tracts in compliance with City, County and State requirements."
5. The summary judgment evidence indicates that Parker attempted to resolve his problem by
contacting city council members, the mayor's office, and numerous city employees in several
departments. The proof does not reflect any continuous, intentionally harmful conduct by any one
particular employee or official but rather a fragmented and, perhaps, inept effort on the part of
various city representatives.
6. Parker cannot recover under 42 U.S.C. section 1983 either. Section 1983 imposes liability
for violations of rights protected by the United States Constitution, not for violations of duties of
care arising out of tort law. See 42 U.S.C. § 1983 (1994); C.M. v. Tomball Regional Hosp., 961
S.W.2d 236, 242-43 (Tex. App.--Houston [1st Dist.] 1997, no writ) (citing Doe v. Taylor Indep.
Sch. Dist., 15 F.3d 443, 447 (5th Cir. 1994)). Because Parker has not been deprived of a right
secured by the United States Constitution, he cannot bring a cause of action under 42 U.S.C.
section 1983. See Upton County v. Brown, 960 S.W.2d 808, 814 (Tex. App.--El Paso 1997, no
writ) (citing Siegert v. Gilley, 500 U.S. 226, 232-33 (1991)). Section 1983 is not a source of
substantive rights, but merely provides a method for vindicating federal rights elsewhere
conferred. Albright v. Oliver, 510 U.S. 266, 271 (1994) (citing Baker v. McCollum, 443 U.S.
137, 144 (1979)).
7. In order to maintain a negligence action, a plaintiff must satisfy three basic elements: (1)
a legal duty on the part of one person to another; (2) breach of that legal duty; and (3) injury to
the person to whom the duty is owed as a proximate result of the breach. See City of Gladewater
v. Pike, 727 S.W.2d 514, 517 (Tex. 1987). The threshold inquiry is whether the defendant owes
a legal duty to the plaintiff. Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995)
(citing Graff v. Beard, 858 S.W.2d 918, 919 (Tex. 1993)). The existence of a duty is a question
of law for the court to decide from the facts surrounding the occurrence in question. Id. (citing
Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990)).
8. Parker stated "[s]uit is brought pursuant to Sections 101.0215, 101.025, and 102.002 of the
Civil Practice and Remedies Code which allows a local government to pay for damages resulting
from an act of an employee in the course of his or her employment arising out of an act or
omission." Chapter 101 of the Texas Civil Practice and Remedies Code is generally referred to
as the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.002 (West 1997). 
9. Parker transmitted by facsimile his Third Amended Petition at 5:40 p.m., on Friday,
January 30, 1998. Pursuant to Rule 21 of the Texas Rules of Civil Procedure, service by
telephonic document transfer after 5:00 p.m. shall be deemed served on the following day, which
in this case, was a Saturday. See Tex. R. Civ. P. 21. The next business day was Monday,
February 2, 1998, two days before the hearing on Defendant's Motion for Summary Judgment.
10. Municipal corporations, like the City of Austin, exercise their broad powers through two
different roles: proprietary and governmental. See Gates v. City of Dallas, 704 S.W.2d 737, 738
(Tex. 1986). Proprietary functions are those functions performed by a city, in its discretion,
primarily for the benefit of those within the corporate limits of the municipality. See City of
Gladewater v. Pike, 727 S.W.2d 514, 519 (Tex. 1987) (citing Gates, 704 S.W.2d at 739). 
Governmental functions are acts performed by the municipality "as an agent of the State in
furtherance of general law for the interest of the public at large." Pike, 727 S.W.2d at 519 (citing
Gates, 704 S.W.2d at 739).


 Before the Tort Claims Act was passed, governmental liability was limited to proprietary
functions. See Edinburg Hosp. Auth. v. Trevino, 941 S.W.2d 76, 81 (Tex. 1997). Municipalities
were afforded governmental immunity for performance of governmental functions. Bailey v. City
of Austin, 972 S.W.2d 180, 192 (Tex. App.--Austin 1998, pet. denied) (citing Gates, 704 S.W.2d
at 738-39). The Tort Claims Act provides for a limited waiver of governmental immunity. Id.;
see Tex. Civ. Prac. & Rem. Code Ann. § 101.025 (Tex. 1997). When a tort is committed by a
City representative in the performance of a proprietary function, provisions of the Tort Claims Act
do not apply and the municipality is subject to the same duties and liabilities as those incurred by
private persons and corporations. Gates, 704 S.W.2d at 739; Turvey v. City of Houston, 602
S.W.2d 517, 518 (Tex. 1980).
11. Section 101.0215 lists activities that fall within a municipality's governmental functions,
including: health and sanitation services; sanitary and storm sewers; waterworks; zoning,
planning, and plat approval; and water and sewer service. See Tex. Civ. Prac. & Rem. Code
Ann. § 101.0215 (West 1997).
12. "'Qualified immunity' is one of several interchangeable terms (including 'quasi-judicial
immunity,' 'discretionary immunity,' 'official immunity,' and 'good faith immunity') used to refer
to an affirmative defense available for governmental employees sued in their individual
capacities." City of Houston v. Kilburn, 849 S.W.2d 810, 812 n.1 (Tex. 1993) (citing Travis v.
City of Mesquite, 830 S.W.2d 94, 100 n.2, 102-03 (Tex. 1992) (Cornyn, J., concurring)).
13. The summary judgment proof establishes that the city planning department had the exclusive
authority to determine, on behalf of the City, whether a parcel of land was a legal lot or a legal
subdivision. Tracy Watson, the only individual appellee associated with the planning department,
stated that prior to January or February of 1993, he was never requested to look into any matter
concerning L. W. Parker or the Pamela Heights subdivision. When this request was made,
Watson testified that he promptly asked his staff at the planning department to investigate; on
February 22, 1993, Watson notified Parker that Pamela Heights had been recognized as a legal
subdivision.
14. Although the above quoted language does not apply to either Tracy Watson or Jorge
Carrasco, we find that they too were acting within the scope of their duties as Acting Director of
the City of Austin Planning and Development Department and city manager, respectively.


M>. (citing
Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990)).
8. Parker stated "[s]uit is brought pursuant to Sections 101.0215, 101.025, and 102.002 of the
Civil Practice and Remedies Code which allows a local government to pay for damages resulting
from an act of an employee in the course of his or her employment arising out of an act or
omission." Chapter 101 of the Texas Civil Practice and Remedies Code is generally referred to
as the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.002 (West 1997). 
9. Parker transmitted by facsimile his Third Amended Petition at 5:40 p.m., on Friday,
January 30, 1998. Pursuant to Rule 21 of the Texas Rules of Civil Procedure, service by
telephonic document transfer after 5:00 p.m. shall be deemed served on the following day, which
in this case, was a Saturday. See Tex. R. Civ. P. 21.